UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:

LUXOTTICA GROUP S.p.A., an
Italian corporation, OAKLEY, INC., a
Washington corporation, and COSTA
DEL MAR, INC., a Florida
corporation,

           Plaintiffs,

   v.

BEEMER & ASSOCIATES III, LLC, a
Florida limited liability company,
ATLANTIC SELF STORAGE, LLC,
Florida limited liability company d/b/a
"BEACH BLVD. FLEA MARKET",
MAHMOUD ASHOURIAN and
ELAINE ASHOURIAN, individually.

           Defendants.

_____/

## **COMPLAINT**

Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa del Mar, Inc. (collectively, "Plaintiffs"), through their undersigned counsel, sue Defendants Beemer & Associates III, LLC, Atlantic Self Storage, LLC d/b/a Beach Blvd. Flea Market, Mahmoud Ashourian and Elaine Ashourian (collectively, "Defendants"), and allege:

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

**NATURE OF ACTION**

1.      This is an action for contributory trademark infringement under the Lanham Act.  The Defendants own, operate, control, and manage a well-known flea market in Jacksonville, Florida called "Beach Blvd. Flea Market" (hereinafter, the "Flea Market") located at 11041 Beach Blvd., Jacksonville, FL 32256.

2.      The Flea Market has been and continues to be a hot-bed for vendors to sell illegal "knock-off" goods, including counterfeits of Ray-Ban, Oakley and Costa sunglasses (the "Counterfeit Merchandise"), the result of which has been to substantially and continuously harm the rights of intellectual property owners such as Luxottica Group, Oakley and Costa del Mar.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over the parties and over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves a claim arising under the Lanham Act.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because they continue to infringe Plaintiffs' famous trademarks in this Judicial District.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

## PARTIES

5.     Plaintiff, Luxottica Group S.p.A. ("Luxottica Group") is an Italian corporation with a principal place of business in Milan, Italy.

6.     Plaintiff, Oakley, Inc. ("Oakley") is a corporation organized and existing under the laws of the State of Washington, having a principal place of business in Foothill Ranch, California.   Oakley is an indirect, wholly owned subsidiary of Luxottica Group S.p.A.

7.     Plaintiff, Costa del Mar, Inc. ("Costa") is a corporation organized and existing under the laws of the State of Florida, having a principal place of business in Daytona, Beach, Florida.   Costa is an indirect, wholly owned subsidiary of FGX International, Inc.

8.     Defendant, Beemer & Associates III, LLC ("Beemer & Associates") is a limited liability company organized and existing under the laws of the State of Florida.   Defendant Beemer & Associates owns the real property upon which the Flea Market operates, and it owns, manages and operates the Flea Market along with Defendants Atlantic Self Storage, LLC, and other affiliated entities, Mahmoud Ashourian and Elaine Ashourian.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

9.    Defendant, Atlantic Self Storage, LLC ("Atlantic Self Storage") is a limited liability company organized and existing under the laws of the State of Florida.  Defendant Atlantic Self Storage owns, manages and operates the Flea Market along with Defendants Beemer & Associates, and other affiliated entities, Mahmoud Ashourian and Elaine Ashourian.

10.    Defendants Mahmoud Ashourian and his wife Elaine Ashourian (collectively, the "Individual Defendants") are residents of Duval County, Florida. At all relevant times, the Individual Defendants were principal owners, members, officers, directors, and/or managers of Beemer & Associates and Atlantic Self Storage and, as such, directed, controlled, ratified, and are participants and moving forces behind the illegal contributory infringing activities described herein.

11.    The Defendants, individually and collectively, own and operate, manage and control the Flea Market and all operations of the Flea Market.

12.    Defendants, acting in concert and participation with each other, have induced, caused and/or materially contributed to the promotion and sale of counterfeit Ray-Ban, Oakley and Costa products at the Flea Market.  With knowledge of these illegal activities, or with willful blindness, Defendants have financially benefitted from them. As such, Defendants are contributorily liable for the infringing activities described below.

## FACTUAL ALLEGATIONS

**A.    The World-Famous Luxottica Brands and Products.**

13.    Luxottica Group is engaged in the manufacture, marketing and sale of premium, luxury and sports eyewear throughout the world.  Luxottica Group's proprietary brands include Ray-Ban, the world's most famous sun eyewear brand, as well as Vogue Eyewear, Persol, Oliver Peoples, Alain Mikli and Arnette, among others.

14.    Through its affiliates and subsidiaries, Luxottica Group operates over 7,000 optical and sun retail stores, including LensCrafters, Pearle Vision and ILORI in North America, OPSM and Laubman & Pank in Asia-Pacific, LensCrafters in China, GMO in Latin America and Sunglass Hut worldwide.

15.    Luxottica Group's Ray-Ban products are distributed and sold through its optical and sun specialty retail stores, authorized retail and department stores, and via its various websites, including www.ray-ban.com, throughout the United States, including Florida.

16.    Luxottica Group has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Ray-Ban products, including but not limited to those detailed in this Complaint.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

17.    Luxottica Group has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Ray-Ban Trademarks (defined below).  As a result, products bearing the Ray-Ban trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Luxottica Group, and have acquired strong secondary meaning.

18.    Luxottica Group is the owner of various trademarks under the Ray-Ban brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Ray-Ban Trademarks"):

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 650,499 | *Ray-Ban* | For: sunglasses, shooting glasses and ophthalmic lenses in class 9. |
| 1,093,658 | *Ray-Ban* | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles and goggles; and cases and other protective covers for sunglasses, eyeglasses, spectacles in class 9. |
| 1,080,886 | **RAY-BAN** | For: ophthalmic products and accessories – namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles in class 9. |

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

| | | |
|---|---|---|
| 3,522,603 | Ray-Ban | For: sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, cases for eyeglasses in class 9. |
| 1,511,615 | LUXOTTICA ☆☆ | For: eyeglasses, sunglasses, temples and eyeglass frames in class 9. |
| 2,971,023 | RB | For: sunglasses, eyeglasses, eyeglass lenses in class 9. |
| 590,522 | G-15 | For: Sunglasses and ophthalmic lenses, in class 9. |

19.    Luxottica Group has long been manufacturing and selling eyewear in interstate commerce under the Ray-Ban Trademarks.[1]  These registrations are valid and subsisting and the majority are incontestable.

20.    The registration of the Ray-Ban Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Luxottica Group's exclusive right to use the Ray-Ban Trademarks in connection with the goods identified therein and other commercial goods.

---

[1] All registrations originally held in the name of Luxottica Group's predecessor's owner of the Ray-Ban Trademarks, Bausch and Lomb, were assigned in full to Luxottica Group in 1999.

21.    The registration of the Ray-Ban Trademarks also provides constructive notice to Defendants of Luxottica Group's ownership and exclusive rights in the Ray-Ban Trademarks.

22.    The Ray-Ban Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1).

23.    The Ray-Ban Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**B.    The World-Famous Oakley Brand and Products.**

24.    Oakley is an internationally recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other related merchandise.

25.    Oakley products are distributed and sold to consumers through its own Oakley O stores, its affiliate's sun retail stores, authorized retailers, and via its internet website: www.oakley.com throughout the United States, including Florida.

26.    Oakley has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Oakley products, including but not limited to those detailed in this Complaint.

27.    Oakley has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Oakley Trademarks (defined

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

below). As a result, products bearing the Oakley Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Oakley and have acquired strong secondary meaning.

28.    Oakley is the owner of various trademarks under the Oakley brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Oakley Trademarks"), among others:

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 1,984,501 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, ear stems, frames, nose pieces and foam strips in class 9. |
| 1,980,039 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, ear stems, frames, nose pieces and foam strips in class 9. |
| 3,331,124 |  | For: protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories in class 9. |
| 1,980,039 |  | For: protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 3,151,994 |  | For: protective eyewear, namely spectacles, prescription eyewear, anti-glare glasses and sunglasses and their parts and accessories in class 9. |

29.     Oakley has long been manufacturing and selling in interstate commerce eyewear under the Oakley Trademarks.  These registrations are valid and subsisting and the majority are incontestable.

30.     The registration of the Oakley Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Oakley's exclusive right to use the Oakley Trademarks in connection with the goods identified therein and other commercial goods.

31.     The registration of the Oakley Trademarks also provides constructive notice to Defendants of Oakley's ownership and exclusive rights in the Oakley Trademarks.

32.     The Oakley Trademarks qualify as famous trademarks, as that term is used in 15 U.S.C. § 1125(c)(1).

33.     The Oakley Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

C.    **The World-Famous Costa Brand and Products.**

34.    The Costa eyewear brand was born in Daytona Beach, Florida in 1983.

35.    Costa has continuously sold Costa branded products, including eyewear, apparel, and other related merchandise through its authorized retailers and via its internet website: www.costadelmar.com throughout the United States, including Florida.

36.    Costa has used a variety of legally protected trademarks for many years on and in connection with the advertisement and sale of its Costa products, including but not limited to, those detailed in this Complaint.

37.    Costa has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Costa Trademarks (defined below). As a result, products bearing the Costa Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Costa and have acquired strong secondary meaning.

38.    Costa is the owner of various trademarks under the Costa brand, including, but not limited to, the following United States Federal Trademark Registrations (collectively, the "Costa Trademarks"), among others:

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

| Registration Number | Trademark | Good and Services |
|---|---|---|
| 3,857,379 | COSTA | For: sunglasses and sunglass frames in class 9. |
| 5,944,853 | COSTA | For: stickers, decals, bumper stickers, decorative decals for vehicle windows |
| 3,273,228 |  | For: sunglasses, sunglass frames, sunglass lenses in class 9. |

39.   Costa has long been manufacturing and selling in interstate commerce eyewear under the Costa Trademarks.  These registrations are valid and subsisting.

40.   The registration of the Costa Trademarks constitutes prima facie evidence of their validity and conclusive evidence of Costa's exclusive right to use the Costa Trademarks in connection with the goods identified therein and other commercial goods.

41.   The registration of the Costa Trademarks also provides constructive notice to Defendant of Costa's ownership and exclusive rights in the Costa Trademarks.

42.   The Costa Trademarks qualify as famous trademarks, as that term is used in 15 U.S.C. § 1125(c)(1).

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

43.     The Costa Trademarks at issue in this case have been continuously used in interstate commerce and have never been abandoned.

**D.    Defendants' Infringing Activities.**

44.     Between March 2022 and April 2023, Plaintiffs' investigators have visited the Flea Market at least 5 times.  In each instance, Defendants' vendors were observed displaying, offering to sell or selling products bearing logos and source-identifying indicia that are imitations of one or more of Plaintiffs' respective trademarks.

45.     On March 13, 2022, Plaintiffs' investigator canvassed the Flea Market and discovered that a vendor operating under the trade name "Hannah Boutique" located at booth no. B39 was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban Trademarks.

46.     During that visit, Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses for a total of $65.00.  Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. B39 are depicted below:

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008




47.    Luxottica Group subsequently inspected the item that was purchased from Defendants' vendor on March 13, 2022, and determined that the Ray-Ban Trademarks affixed to the sunglass frames, lenses and related accessories are either incorrect or inconsistent with the Ray-Ban Trademarks found on similar products and items bearing authentic Ray-Ban Trademarks.

48.    Luxottica Group also determined that the item purchased from Defendants' vendor that bore reproductions of the Ray-Ban Trademarks was in fact a counterfeit product that infringed one or more of the Ray-Ban Trademarks.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

49.    On June 5, 2022, Plaintiffs' investigator returned to the Flea Market and discovered that a vendor located at booth no. S-34A was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban Trademarks.

50.    During that visit, Plaintiffs' investigator purchased two pairs of Ray-Ban branded sunglasses for a total of $25.00.  Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. S-34A are depicted below:

 



**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

51.     Luxottica Group subsequently inspected the items that were purchased from Defendants' vendor on June 5, 2022, and determined that the Ray-Ban Trademarks affixed to the sunglass frames, lenses and related accessories are either incorrect or inconsistent with the Ray-Ban Trademarks found on similar products and items bearing authentic Ray-Ban Trademarks.

52.     Luxottica Group also determined that the items purchased from Defendants' vendor that bore reproductions of the Ray-Ban Trademarks were in fact counterfeit products that infringed one or more of the Ray-Ban Trademarks.

53.     On August 3, 2022, Luxottica Group sent a cease-and-desist letter to the Flea Market in connection with the counterfeiting activities of the vendors located at booth no. B39.  The letter was addressed to "Owner/Manager" and sent to Beach Blvd. Flea Market's principal address located at 11041 Beach Blvd., Jacksonville, FL 32246.

54.     Luxottica Group also sent a copy of the cease-and-desist letter to Beemer & Associates III, LTD (the entity listed in the Duval County Public Records as the owner of the property).  The letter was addressed to "Mike and Elaine Ashourian" and sent to 7880 Gate Pkwy., Suite 300, Jacksonville, FL 32256.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

55.    On August 19, 2022, Luxottica Group sent a second cease-and-desist letter to the Flea Market in connection with the counterfeiting activities of the vendors located at booth no. S-34A.  The letter was addressed to "Owner/Manager" and sent to the Flea Market's principal address located at 11041 Beach Blvd., Jacksonville, FL 32246.

56.    Luxottica Group also sent a copy of the cease-and-desist letter to Beemer & Associates III, LTD.  The letter was addressed to "Mike and Elaine Ashourian" and sent to 7880 Gate Pkwy., Suite 300, Jacksonville, FL 32256.

57.    On September 17, 2022, Plaintiffs' investigator returned to Beach Blvd. Flea Market and discovered that a vendor located at booth no. S-30 was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban and Oakley Trademarks.

58.    During that visit, Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses and one pair of Oakley branded sunglasses for a total of $50.00. Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. S-30 are depicted below:

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

 



59.    During that same visit, Plaintiffs' investigator also discovered that a vendor located at booth no. C-13 was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban Trademarks.

60.    Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses for a total of $15.00.  Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. C-13 are depicted below:




61.    Luxottica Group subsequently inspected the items that were purchased from Defendants' vendors on September 17, 2022, and determined that the Ray-Ban and Oakley Trademarks affixed to the sunglass frames, lenses and related accessories are either incorrect or inconsistent with the Ray-Ban and Oakley

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

Trademarks found on similar products and items bearing authentic Ray-Ban and Oakley Trademarks.

62.    Luxottica Group also determined that the items purchased from Defendants' vendors that bore reproductions of the Ray-Ban and Oakley Trademarks were in fact counterfeit products that infringed one or more of the Ray-Ban and Oakley Trademarks.

63.    On October 12, 2022, Luxottica Group sent a third cease-and-desist letter to the Flea Market in connection with the counterfeiting activities of the vendors located at booth no. S-30 and C-13.    The letter was addressed to "Owner/Manager" and sent to the Flea Market's principal address located at 11041 Beach Blvd., Jacksonville, FL 32246.

64.    Luxottica Group also sent a copy of the cease-and-desist letter to Beemer & Associates III, LTD.    The letter was addressed to "Mike and Elaine Ashourian" and sent to 7880 Gate Pkwy., Suite 300, Jacksonville, FL 32256.

65.    On October 23, 2022, Plaintiffs' investigator returned to the Flea Market and discovered that the vendor located at booth no. S-30 was again displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban and Oakley Trademarks.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

66.    During that visit, Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses and one pair of Oakley branded sunglasses for a total of $50.00. Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. S-30 are depicted below:

 



**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

67.     During that same visit, Plaintiffs' investigator also discovered that a vendor located at booth no. N-21 was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban Trademarks.

68.     Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses for a total of $15.00.  Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. N-21 are depicted below:

 

69.     Luxottica Group subsequently inspected the items that were purchased from Defendants' vendors on October 23, 2022, and determined that the Ray-Ban and Oakley Trademarks affixed to the sunglass frames, lenses and related accessories are either incorrect or inconsistent with the Ray-Ban and Oakley

Trademarks found on similar products and items bearing authentic Ray-Ban and Oakley Trademarks.

70.    Luxottica Group also determined that the items purchased from Defendants' vendor that bore reproductions of the Ray-Ban and Oakley Trademarks were in fact counterfeit products that infringed one or more of the Ray-Ban and Oakley Trademarks.

71.    On October 27, 2022, Luxottica Group sent a fourth cease-and-desist letter to the Flea Market in connection with the counterfeiting activities of the vendors located at booth nos. S-30 and N-21.   The letter was addressed to "Owner/Manager" and sent to the Flea Market's principal address located at 11041 Beach Blvd., Jacksonville, FL 32246.

72.    Luxottica Group also sent a copy of the cease-and-desist letter to Beemer & Associates III, LTD.  The letter was addressed to "Mike and Elaine Ashourian" and sent to 7880 Gate Pkwy., Suite 300, Jacksonville, FL 32256.

73.    The Flea Market finally responded to Luxottica Group's August 3rd letter with its own letter dated October 28, 2022.  In its letter, the Flea Market acknowledged receipt of Luxottica Group's August 3, 2022 Cease and Desist letter, however, it denied having "first-hand knowledge" of its vendor's infringing activities.   Specifically, the Flea Market's letter stated, in part:

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

> We do not have first-hand knowledge of whether Tenant was violating Luxottica's Intellectual property rights, however, we sent an e-mail to Tenant . . . in response to the Letter, telling Tenant to correct to the situation and stop selling counterfeit products . . . as the Lease specifically prohibits tenants from using the premises in an unlawful manner.

74.     The October 28, 2022 letter from the Flea Market also enclosed a copy of the rental agreement with the vendor located at booth no. B39.  According to the rental agreement, vendor/tenants are only permitted to sell items that are specifically approved by the Flea Market.

75.     The October 28, 2022 letter from the Flea Market also enclosed a copy of a "Table & Aisle Space Rental Policy" which authorized the Flea Market to terminate tenant/vendors that violated any of the Flea Market's rules:

> INFRACTIONS OF ANY RULE OR REGULATION WILL RESULT IN A $50.00 FINE (PER UNIT/PER TABLE) AND/OR YOUR FLEA MARKET PRIVILEGES MAY BE SUSPENDED OR TERMINATED.

76.     On April 16, 2023, Plaintiffs' investigator returned to the Flea Market and discovered that a vendor located at booth no. A-62 was displaying, offering for sale, and/or selling in plain view sunglasses bearing reproductions of one or more of the Ray-Ban, Oakley and Costa Trademarks.

77.    Plaintiffs' investigator purchased one pair of Ray-Ban branded sunglasses, two pair of Oakley branded sunglasses, and one pair of Costa branded sunglasses for a total of $80.00.   Photographs of the sunglasses that were being offered for sale and purchased on that day from the vendor located at booth no. A-62 are depicted below:







**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008



78.     Notably, on that day, vendors located at booth nos. B39, S-30, S-34A, and C-13 (who were previously observed offering to sell and selling Counterfeit Merchandise) were also observed offering to sell products bearing trademarks of other luxury brand owners.

79.     Luxottica Group subsequently inspected the items that were purchased from Defendants' vendor on April 16, 2023, and determined that the Ray-Ban, Oakley and Costa Trademarks affixed to the sunglass frames, lenses and related accessories are either incorrect or inconsistent with the Ray-Ban, Oakley and Costa Trademarks found on similar products and items bearing authentic Ray-Ban, Oakley and Costa Trademarks.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

80.    Luxottica Group also determined that the items purchased from Defendants' vendor that bore reproductions of the Ray-Ban, Oakley and Costa Trademarks were in fact counterfeit products that infringed one or more of the Ray-Ban, Oakley and Costa Trademarks.

81.    Defendants have no license, authority, or other permission from Luxottica Group, Oakley or Costa to use any of the Ray-Ban, Oakley or Costa Trademarks in connection with the advertising, promoting, distributing, publicly, displaying, selling, and/or offering for sale of the Counterfeit Merchandise.

82.    The forgoing acts of the Defendants' vendors constitute direct trademark infringement and counterfeiting in violation of the Lanham Act.

83.    The forgoing acts of the Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that counterfeit Ray-Ban, Oakley, and Costa products offered for sale and sold at the Flea Market are authentic or authorized products of Luxottica Group, Oakley and Costa.

84.    The activities of the Defendants, as described above, are likely to create a false impression and deceive consumers, the public, and the trade into believing that there is a connection or association between the counterfeit Ray-Ban, Oakley and Costa products and Luxottica Group, Oakley and Costa.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

85.    Defendants are well aware of the extraordinary fame and strength of the Ray-Ban, Oakley and Costa brands, the Luxottica Group, Oakley and Costa Trademarks, and the incalculable goodwill associated therewith.

86.    By facilitating counterfeiting activities at the Flea Market, Defendants have acted with reckless disregard for, and in bad faith and with willful blindness toward, Luxottica Group, Oakley and Costa and their respective trademarks.

87.    Each of the cease-and-desist letters that were sent to the Defendants and referenced herein advised the Defendants that: (a) Plaintiffs' investigator had purchased counterfeit Ray-Ban, Oakley and/or Costa products from specific vendors at the Flea Market; (b) Plaintiffs could bring a civil action for damages and other relief under the Lanham Act for trademark infringement; (c) Defendants could be held liable as landlord for the trademark violations of their vendor-tenants if they knew of, had reason to know of, or were willfully blind to the sale of counterfeit goods; and (d) Plaintiffs intended to hold Defendants responsible for all damages if they failed to take action to prevent the sale of counterfeit products by their vendor-tenants.    The cease-and-desist letters also demanded the Defendants take steps to prevent further sale of counterfeit goods and submit information to Plaintiffs detailing the steps Defendants would take to correct the problem.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

88.    The Defendants have, either intentionally and deliberately, or with reckless disregard and willful blindness, benefitted from the illegal counterfeiting activities described herein.

89.    The Defendants deliberate and or reckless and/or willfully blind misconduct has caused, and continues to cause, substantial and irreparable harm to Luxottica Group, Oakley and Costa's goodwill and reputation.  In addition, the damages caused by Defendants, which continue to accrue, are especially severe because the Counterfeit Products sold at the Flea Market are cheap and grossly inferior in quality to authentic Ray-Ban, Oakley and Costa products.

90.    The harm being caused to Luxottica Group, Oakley and Costa is irreparable and they do not have an adequate remedy at law.  Luxottica Group, Oakley and Costa therefore seek the entry of an injunction preventing the sale of counterfeit Ray-Ban, Oakley and Costa products at the Flea Market.  Luxottica Oakley and Costa also seek statutory damages pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117) as a result of the Defendants' knowing, deliberate and willful disregard of the activities infringing the Ray-Ban, Oakley and Costa Trademarks.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

## COUNT I
## Contributory Trademark Infringement
## (15 U.S.C. § 1114)

91.     Plaintiffs repeat and re-allege the allegations set forth in Paragraphs 1 through 90 above.

92.     The Defendants supplied the means for the Flea Market's vendors to engage in the illegal activities described herein, and, with knowledge of such activities, deliberately or recklessly willfully blinded themselves to this illegal conduct, deciding instead to profit from the revenues it produced.

93.     As a result, Defendants have willfully infringed Luxottica Group's, Oakley's and Costa's Trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Luxottica Group S.p.A., Oakley, Inc. and Costa del Mar, Inc. respectfully request that this Court enter judgment in their favor and against Defendants Beemer & Associates III, LLC, Atlantic Self Storage, LLC d/b/a Beach Blvd. Flea Market, Mahmoud Ashourian and Elaine Ashourian, jointly and severally, on all counts pled herein, as follows:

A.      Awarding Plaintiffs statutory damages per counterfeit mark per type of good offered for sale in accordance with Section 35 of the Lanham Act (15 U.S.C. § 1117);

B.      Awarding Plaintiffs pre-judgment interest on any monetary award made part of the judgment against Defendants;

C.      Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116, and 17 U.S.C. § 502, preliminarily and permanently restraining and enjoining Defendants, their agents, employees, and all those persons or entities in active concert or participation with it from:

1.      importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear Ray-Ban, Oakley and Costa Trademarks, or any other mark or design element substantially similar or confusing thereto, including, without limitation, the Counterfeit Merchandise, and engaging in any other activity constituting an infringement of any of Luxottica Group's, Oakley's and Costa's rights in their respective Ray-Ban, Oakley and Costa Trademarks;

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

2.    engaging in any other activity constituting unfair competition with Luxottica Group, Oakley and Costa, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of any trademark, service mark, name, logo, design and/or source designation associated with the Ray-Ban, Oakley and Costa Trademarks.

D.    Requiring Defendants to file with this Court and serve on Plaintiffs within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

E.    Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action that has been advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Luxottica Group, Oakley and Costa, or is related in any way with Luxottica Group, Oakley and Costa and their products;

F.    Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

Dated this 8th day of May 2023.

Respectfully submitted,

*/s/ David B. Rosemberg*
David B. Rosemberg (Fla. Bar. 0582239)
**ROSEMBERG LAW**
20200 W. Dixie Hwy., Suite 602
Aventura, FL 33180
Ph: 305.602.2008
Fax: 305.602.0225
Email: david@rosemberglaw.com

*Counsel for Plaintiffs Luxottica Group*
*S.p.A., Oakley, Inc. and Costa del Mar, Inc.*

4870-4719-9585, v. 1

**ROSEMBERG LAW**
Beacon Tower of Aventura, Suite 602 | 20200 W. Dixie Hwy., Aventura, Florida 33180 | 305.602.2008